**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**STEPHEN SYLVESTER WALKER, JR.,**

       **Plaintiff,**

**v.**                            **Civil Action No. 1:15cv213**
                                          **(Judge Keeley)**

**USP WARDEN;[1] MATTHEW**
**BUSHMAN; GREGORY MIMS;**
**HOWARD FITZHUGH; JAMES**
**NOLTE; and JUSTIN REBAULT,**

       **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff, an inmate incarcerated at FMC Lexington in Lexington, Kentucky, initiated this case on November 16, 2015, by filing a <u>Bivens</u>[2] civil rights complaint against the above-named defendants. Along with his complaint, the plaintiff filed a motion to proceed in forma pauperis ("IFP") with supporting documents. Pursuant to a Notice of Deficient Pleading by the Clerk of Court, on November 30, 2015, Plaintiff filed a copy of the Ledger Sheets to his Inmate Trust Account. By Order entered January 5, 2016, Plaintiff was granted permission to proceed IFP but directed to pay an initial partial filing fee ("IPFF"). Plaintiff paid the IPFF on January 26, 2016. On February 9, 2016, the undersigned conducted a preliminary review of the

---

[1] The Warden of USP Hazelton at the time the acts complained of in plaintiff's complaint occurred was Terry O'Brien. The Clerk will be directed to correct the docket to reflect the Warden's true name.

[2] <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities.

file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day.

The docket reflects that Defendants O'Brien and Mims were served on February 17, 2016 and Defendant Nolte was served on February 18, 2016. ECF No. 21. The summonses for Defendants Bushman, Fitzhugh, and Rebault were returned unexecuted on April 7, 2016; the U.S. Marshal Service indicated that as of April 5, 2016, "per Zach Kelton, Mid Atlantic Regional Counsel," each of the three were "never employed by [the] BOP," and therefore, the BOP was unable to accept service on their behalf. ECF No. 22-1 at 2, ECF 22-2 at 2, and ECF No. 22-3 at 2, respectively.

On April 14, 2016, Defendants Gregory Mims ("Mims"), James Nolte ("Nolte"), and Terry O'Brien, the Warden of USP Hazelton, filed a Motion to Dismiss with a memorandum in support. ECF No. 24 and 25. Also on April 14, 2016, the plaintiff filed a letter motion requesting that the court order that service of the remaining defendants be effectuated through a subcontractor or third parties. ECF No. 27. Because the plaintiff was proceeding *pro se,* the Court issued a <u>Roseboro</u> Notice on April 18, 2016, advising the plaintiff of his right to respond to Defendants Mims, Nolte, and O'Brien's dispositive motion. By Order entered April 18, 2016, the plaintiff's letter motion seeking service of the remaining defendants through a subcontractor or third parties was denied and the plaintiff was directed to provide updated addresses for the remaining defendants. ECF No. 30. Plaintiff did not file a response to Mims, Nolte, and O'Brien's dispositive motion, but on May 9, 2016, he did file a motion to amend the complaint, within which was included a motion for appointed counsel. ECF No. 33.

This case is before the undersigned for a Report and Recommendation on the defendants O'Brien, Mims, and Nolte's dispositive motion.

## II. Contentions of the Parties

### A. The Complaint

In his complaint, filed without a memorandum in support, the plaintiff, now 34 years old,[3] alleges that while he was incarcerated at USP Hazelton, the defendants, the Warden of USP Hazelton and various medical staff, were deliberately indifferent to his serious medical needs "in violation to . . . [his] right to [sic] the constitution." ECF No. 1 at 10. Further, he alleges the defendants committed medical negligence and medical malpractice by failing to timely diagnose and provide appropriate treatment for his condition, including prescribed correct medication. Id. Specifically, Plaintiff contends that in May, 2014, he suffered a recurrence of Hodgkin's Lymphoma,[4] which had previously been in remission.[5] He alleges that the defendants ignored

---

[3] Information of Plaintiff's age was obtained from the BOP's online inmate locator.

[4] Hodgkin's Lymphoma is a cancer that develops from cells in the lymphatic system (part of the body's immune system) called lymphocytes. Its symptoms tend to be fairly non-specific and share many characteristics with other illnesses, such as a cold, the flu, and other types of respiratory infection. The early stages of Hodgkin lymphoma often do not cause any symptoms. When they do occur, a common early sign of Hodgkin lymphoma is painless swelling of one or more lymph nodes, usually in the neck. Additional Hodgkin lymphoma signs may include:
- Swollen lymph nodes in the neck, underarms or groin
- Intermittent fevers
- Drenching night sweats
- Feeling tired all the time
- Unexplained weight loss
- Decreased appetite
- Generalized itching
- Abdominal pain or swelling, feeling of fullness
- Coughing, shortness of breath, chest discomfort

See Hodgkin Lymphoma Information, available at: http://www.cancercenter.com/hodgkin-lymphoma/learning/?source=GGLPS01&channel=paid+search&invsrc=Non_Branded_Paid_Search_Google_Cancer_Search&utm_device=c&utm_budget=Corporate&utm_site=GOOGLE&utm_campaign=Non+Brand%3ECancer+Type%3A+Hodgkin+Lymphoma&utm_adgroup=Learning%3EGeneral%3EExact&utm_term=hodgkin%27s+lymphoma&utm_matchtype=e&k_clickid=39026cc2-ef76-4816-ae81-f6a0970994b4&k_profid=422&k_kwid=461312

[5] Plaintiff's Hodgkin's Lymphoma had apparently been in remission since 2008 or 2009. See ECF No. 1-1 at 3 and ECF No. 1-1 at 4.

and/or mistreated his symptoms for seven months, until he developed pericardial and pleural effusions and collapsed on December 25, 2014, when he was finally hospitalized.  Id. at 8. Plaintiff describes the course of events, stating:

> I reported to sick call on or about May, 2014. Complained about unusual cough, advised PA[6] I was in remission for Hodgkins Lymphoma[.] I explained that I was having fevers, Fatigue [sic], Persistent Cough [sic], Shortness [sic] of breath, sweating during sleeping hours, and itching.  PA ignore [sic] symptoms and with out [sic] any testing, examinations [sic], prescribed me Prednisone.  After suffering several days I returned to sick call on or about June, 16, 2014 [sic] complained about same symptoms, requested PET scan . . . PA Bushman, without conducting any examinations testing[,] prescribed me Prednisone, Benzonatate[,]  Albutarol [sic] Inhaler[.]  FHA Gregory Mims Co-Signed [sic].  I continued to suffer  and signed up for sick call again shortly there after [sic] and was seen by PA  J. Ribault, G. Mims, and J. Nolte ignored their professional duties, and with out [sic] regard for my health determined and diagnosed that I had Asthma[.] This determination was made without any testing.  I continued to suffer substantially and my condition worsened. I had difficulty breathing, my judgment was clouded and I could not eat, sleep well, and I stressed [sic] to the point that my worry caused me depression because I thought the Medical [sic] staff did not care and was not professional and was intentionally inflicting pain and suffering by not providing me proper treatment in a timely manner.  It was 12-25-14 before I was given proper treatment.

ECF No. 1 at 8.

A copy of an April 29, 2015 response to one of Plaintiff's administrative remedies from one Francisco J. Quintana, Warden, attached to the complaint, provides more detail about the course of Plaintiff's illness and treatment, and states in pertinent part:

> A review of your medical record and interview with staff reveals you were transferred to USP Hazelton, WV, on March 4, 2014. During your medical intake screening, it is noted you were diagnosed with Hodgkin's Lymphoma in 2008, and were currently in remission.  On June 3, 2014, you reported to sick call with a complaint of a non-productive cough, and were seen by the Mid-Level Provider (MLP). During the encounter, you denied any fever, chills, weight loss, night sweats, or sore throat.  The MLP noted you had wheezing in your lungs; he prescribed Prednisone 60mg, Benzonatate 100 mg three times daily, and an Albuterol Inhaler, for your cough and wheezing.  Chest x-rays were also ordered, and you were advised to return to Health Services if your condition worsened.  On June 16, 2014, you had a chest x-ray completed which revealed negative findings.

---

[6] "PA" as used herein is an abbreviation for physician's assistant.

On September 15, 2014, you reported to sick call for your chronic cough, stating it was worse at night, and your medication provided no relief.  It is noted coughing was not part of your syndrome during your active Hodgkin's Lymphoma occurrences.  There was no sign of wheezing during your examination.  Your provider then requested your medical records from the community hospital which included your previous positron emission tomography (PET) scan results.

On October 24, 2014, you reported to sick call with a complaint of wheezing and episodes of shortness of breath.  Although you did not have a history of asthma, you stated your sister did. After further evaluation, you were diagnosed with asthma and were prescribed an Albuterol Inhaler and Mometasone Furoate 220mcg.  On December 2, 2014, you reported to sick call again for your cough.  The MLP noted your records were not yet received from your previous institution which contained your PET scan results; the MLP ordered a PET scan to be performed at your current facility for further evaluation.

On December 25, 2014, you reported to sick call stating you were weak and short of breath.  You claimed your asthma medication provided no improvement.  You were examined by the nurse and were sent to the local emergency room as ordered by the MLP. A CAT scan was performed upon arrival, which revealed a large pericardial effusion, or an abnormal amount of fluid between the heart and the sac surrounding the heart.  You also had symptoms of lymphadenopathy, or lymph nodes abnormal in size.  As a result, you were admitted to the Coronary Care Unit (CCU). On January 6, 2015, you underwent a left Chamberlain procedure for tissue biopsies, which revealed positive results for lymphoma. You started your first round of ABVD chemotherapy treatment on January 10, 2015.  On January 20, 2015, a PET scan was performed which revealed a mass consistent with your history of Hodgkin's Lymphoma.  On January 29, 2015, you were transferred to the Federal Medical Center (FMC) Lexington, KY, for further evaluation of a Bone Marrow Transplant (BMT).  You are currently being treated by the University of Kentucky BMT Clinic.

ECF No. 1-1 at 4 – 5.

Plaintiff further alleges that he suffered and continues to suffer serious physical and mental injuries, including constant pain and depression. Id. at 10.

Plaintiff contends that he has exhausted his administrative remedies and attaches copies in support. Id. at 4 – 6 and ECF No. 1-1.

As relief, the plaintiff requests five million dollars for his pain and suffering. Further, he seeks injunctive relief in the form of "further training . . . [for] medical staff bureau wide so more accurate judgments can be made when determining ones [sic] degree of sickness." Id.

## B. **Defendants O'Brien, Mims, and Nolte's Motion to Dismiss**

Defendants O'Brien, Mims, and Nolte contend that Plaintiff's complaint should be dismissed because

1) the plaintiff makes no specific allegations against Defendant O'Brien, other than to allege that he served as Warden of USP Hazelton during the relevant time period, and there is no *respondeat superior* liability in a Bivens action; and

2) Defendants Mims and Nolte must be dismissed from this action, because as Public Health Service employees, they are immune from suit pursuant to 42 U.S.C. § 233(a).

## C. **Plaintiff's Motion to Amend Complaint and for Appointed Counsel**

In response to the defendants O'Brien, Mims, and Nolte's dispositive motion, Plaintiff concedes his claims against them and moves for the dismissal of O'Brien, Nolte and Mims from this action. Further, the plaintiff request that counsel be appointed.

## III. **Standard of Review**

## A. **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id</u>.; <u>see</u> <u>also</u> <u>Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc.</u>, 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id</u>.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (per curiam); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, <u>Haines</u>, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. <u>Id</u>. at 520-21. The mandated

liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. <u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. <u>Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co</u>., 267 F.3d 30 (1st Cir. 2001)(cited with approval in <u>Witthohn v. Federal Ins. Co</u>., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." <u>Katyle v. Penn Nat'l Gaming, Inc</u>., 637 F.3d 462 (4th Cir. 2011).

**B. <u>Motion for Summary Judgment</u>**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u>, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita</u>, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id.</u> This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' <u>Anderson</u>, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587.

### III. <u>Analysis</u>

**A. <u>Deliberate Indifference to Serious Medical Needs</u>**

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" <u>Id.</u> at 833.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual

punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[7]

The subjective component of a cruel and unusual punishment claim is satisfied by showing

---

[7] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998); Beaman v. Unger, 838 F.Supp.2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) report and recommendation adopted, 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

that the prison official acted with deliberate indifference.  Wilson, 501 U.S. at 303.  A finding of deliberate indifference requires more than a showing of negligence.  Farmer v. Brennan, *supra* at 835.  A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent."  Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable to the inmate." Bowring v. Godwin, 551 F.2d 44, 47- 48 (4th Cir. 1977). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health."  See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

**1) Defendant O'Brien**

Plaintiff's complaint makes no allegation against Defendant O'Brien; Plaintiff only references that O'Brien is a named defendant by his title, "U.S.P. Warden." ECF No. 1 at 2. Plaintiff did not include a memorandum in support to expand on his claims. However, he did attach copies of grievances filed over the claims in his complaint. In what appears to be an attachment or partial attachment to a grievance, Plaintiff does contend that before he was sent to the hospital in Morgantown, West Virginia after his December, 2014 collapse, he spoke "to the warden and advised him of my conditions and he stated that Coughing [sic] was not a symptom so he did not see the need for a PET scan." ECF No. 1-1 at 2. Other than this one statement, there is no other mention of the Warden of USP Hazelton in Plaintiff's entire Complaint or the attachments thereto.

As Defendant O'Brien notes in his dispositive motion, liability in a <u>Bivens</u> action is "personal, based upon each defendant's own constitutional violations." <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Thus, in order to establish liability in a <u>Bivens</u> case, a plaintiff must specify the acts taken by the defendant which violate his constitutional rights. <u>See</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2nd Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. <u>See</u> <u>Zeitler v. Wainwright</u>, 802 F.2d 391, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u>, 423 U.S. 362 (1976).

As a preliminary matter, the Fourth Circuit has held that non-medical supervisory personnel, like a warden, may rely on the opinion of medical staff regarding the proper medical treatment of inmates. <u>See</u> <u>Miltier</u>, *supra* at 855. Accordingly, here, O'Brien, as the Warden of

USP Hazelton, did not and should not substitute his own medical judgment for that of medical professionals.

Plaintiff has made no claim that Defendant O'Brien was personally involved in the violation of his constitutional rights. Instead, it appears that the plaintiff names defendant O'Brien only in his official capacity as the Warden. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985)(citation and quotations omitted). Nonetheless, in Miltier, 896 F.2d at 854, the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that [s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. This plaintiff has not done. Moreover, Plaintiff concedes his claim against O'Brien in his Motion to Amend, stating in pertinent part:

> Petitioners [sic] complaint consists of defects defendants have moved the court
> for dismissal of the petitioners [sic] Bivens Complaint and this raises ligitimate
> [sic] concerns that at least a portion of the complaint could be seriously
> comprimised [sic] if plaintiffs [sic] entire motion [sic] is dismissed, therefore

> petitioner [sic] respectfully moves the Honorable Court to suppliment [sic] his complaint by removing defendants Terry Obrien [sic], James Nolte, and Gregory Mims from his original Motion [sic] and any language refering [sic] to those defendant's [sic][.]

ECF No. 33 at 1.

Accordingly, the undersigned recommends that because plaintiff fails to allege any personal involvement on the part of defendant O'Brien and both parties agree that O'Brien should be dismissed from this action, O'Brien should be dismissed for failure to state a claim upon which relief can be granted.

## 2) Defendants Mims and Nolte
### Public Health Service Immunity

Defendants Mims and Nolte contend that they should be dismissed from this action because as former and current Public Health Service officers respectively, they are immune from liability in a Bivens suit. In support of this, they attach a copy of a sworn Declaration of Richard T. Yost, Human Resource Manager, FCC Hazelton, attesting to the same. ECF No. 25-1 at 2.

Constitutional claims against federal employees in their individual capacities are subject to the limitations of judicial authority. In Carlson v. Green, 446 U.S. 14 (1980), the Supreme Court found two instances in which a Bivens action cannot be maintained. First, when there are "special factors counseling hesitation in the absence of affirmative action by Congress." Carlson at 18. Second, when "Congress has provided an alternative remedy which is explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective." Id. at 18-19 (emphasis in original).

With regard to Public Health Officers, Congress has explicitly stated that the exclusive remedy for personal injury resulting from the medical decision of a commissioned officer of the Public Health Service while acting within the scope of his employment is against the United

States under the FTCA.  <u>See</u> 42 U.S.C. §233(a) ("The remedy against the United States provided by sections 1346(b) and 2672 of Title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of Title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental or related function . . . by any commissioned officer of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.).  Therefore, claims against Public Health Officers cannot be maintained under <u>Bivens</u>.

In this case, the undisputed evidence shows that Defendant Mims was  commissioned as a Public Health Service Officer by the United States Public Health Service, and was employed at USP Hazelton at the time of the acts complained of in the complaint,[8] and Defendant Nolte is apparently still employed by the United States Public Health Service as a Public Health Service Officer, employed with the BOP. <u>See</u> Defendants' Ex. 1 (Declaration of Richard T. Yost) at ¶ 1 - 4.  Because the actions complained of in the complaint occurred while Defendants Mims and Nolte were acting within the scope of their employment with the Public Health Service, they are immune from personal liability in this case.  In his motion to amend, noted *supra,* Plaintiff also concedes his claims against both Mims and Nolte, and agrees that they should be dismissed from this action.

Accordingly, the undersigned recommends that Mims and Nolte be dismissed from this action because they are immune from liability in a <u>Bivens</u> action.

## 3) <u>Defendants Bushman, Fitzhugh, and Rebault</u>

---

[8] Mims apparently resigned from the BOP in March, 2015. <u>See</u> ECF No. 25-1 at 2.

### <u>Service of Process Under Fed.R.Civ.P. 4(m)</u>

Plaintiff initiated this action on November 16, 2015. He was granted permission to proceed as a pauper on January 5, 2016, and paid his IPFF on January 26, 2016. The defendants were ordered to answer the complaint on February 9, 2016 and 60-day summonses were issued for each of them. Service of summons was made on O'Brien, Mims, and Nolte on February 17 and 18, 2016, respectively, which was within 120 days of the February 9, 2016 order. However, the summonses for Defendants Bushman, Fitzhugh, and Rebault were returned unexecuted on April 7, 2016. On April 14, 2016, Plaintiff filed a letter motion requesting that the court order that service on Bushman, Fitzhugh, and Rebault be effectuated through a subcontractor or third parties. By Order entered April 18, 2016, the plaintiff's letter motion seeking service of the Bushman, Fitzhugh, and Rebault through a subcontractor or third parties was denied and he was directed to provide updated addresses for the remaining defendants within 21 days. Further, he was warned that the failure to do so in the allotted time could result in the dismissal of Rebault, Bushman, and Fitzhugh from this action without further notice. Plaintiff never provided the Court with updated addresses for these three defendants. Accordingly, service has never been effectuated on Defendants Bushman, Fitzhugh, and Rebault.

At the time the defendants were directed to answer the complaint, Fed.R.Civ.P. 4(m) had recently been amended and stated in pertinent part:

> (m) Time Limit for Service. **If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.** But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (emphasis added). While this language appears to require the court to grant requested extensions of time, the requirement applies only if the plaintiff can establish good

cause. If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); <u>see</u> <u>also</u> <u>Bush v. City of Zeeland</u>, 74 Fed. Appx. 581, 2003 WL 22097837 at *2 (6th Cir. 2003) (citations omitted). The determination as to whether good cause exists is one left to the court's discretion. <u>San Giacomo-Tano v. Levine</u>, 1999 U.S. App. LEXIS 26997 at * 3-4 (4th Cir. Oct. 27, 1999) (*per curiam).*

Here, recognizing the Plaintiff's difficulties as an incarcerated individual, in the April 18, 2016 Order denying Plaintiff's letter motion seeking to serve Rebault, Bushman, and Fitzhugh through a subcontractor or third party, the Plaintiff was granted an extension of 21 additional days in which to provide addresses for them. Plaintiff did not do so within the allotted time period and never requested any extension of time in which to do so.  It has now been over nine months since plaintiff filed his complaint. Plaintiff has had more than sufficient time to provide correct information in order to effectuate service on Defendants Rebault, Bushman, and Fitzhugh in this action. Noting plaintiff's lack of diligence in doing so, the undersigned must recommend that Plaintiff's claims against these three defendants be dismissed; normally a dismissal for failure to effectuate service of process is without prejudice.  However, upon further review, it is apparent that these defendants' dismissal must be with prejudice.  Recognizing the devastating impact of dismissal of the only three remaining defendants in Plaintiff's case, the undersigned will nonetheless undertake a review of the merits of Plaintiff's claims against them.

A careful review of the complaint reveals that as with Defendant O'Brien, Plaintiff has made no allegation of any kind against Defendant Fitzhugh, either in the complaint or in any of its attached grievances.  Accordingly, because even if he had been served, Plaintiff has failed to state a claim upon which relief could be granted against Defendant Fitzhugh, thus Fitzhugh's dismissal should be with prejudice.

Likewise, Plaintiff's claims against Defendants Rebault and Bushman, even if service had been effectuated, would be due to be dismissed as well. The burden of demonstrating deliberate indifference to a serious medical need is very high. For example, in Sosebee v. Murphy, 797 F.2d 182-83 (4th Cir. 1986); the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct *might* establish deliberate indifference to a serious medical need. And in Webster v. Jones, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye. Id. at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. Id. The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. See also Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Here, the available record is limited; Plaintiff did not attach copies of his medical records and appears to allege the facts regarding the course of his medical issues from memory; by contrast, the responses to the administrative remedies attached to his complaint appear to be reciting facts taken from a direct review of Plaintiff's medical records. Plaintiff contends that "on or about May, 2014," he reported to sick call; was seen by PA Bushman; and advised Bushman that he was in remission for Hodgkin's Lymphoma and was having fevers, fatigue,

persistent cough, shortness of breath, night sweats and itching, but Bushman "ignored" his symptoms, and without examining him or ordering any tests, prescribed Prednisone.[9] Plaintiff contends he returned to sick call on or about June 16, 2014, complaining of the same symptoms and requesting a PET scan, but again, Bushman without any exam or testing, prescribed Prednisone, along with Benzonatate[10] and an Albuterol inhaler. ECF No. 1 at 8.

However, the Warden's April 29, 2015 response to Plaintiff's administrative remedy states that a review of Plaintiff's records indicate he was first seen in sick call on June 3, 2014 for a complaint of non-productive cough, and that he specifically denied fever, chills, weight loss, night sweats, or sore throat at that time. ECF 1-1 at 4. Because Plaintiff had also had some chest wheezes on exam, the Prednisone, Benzonatate, and Albuterol inhaler were ordered; a chest x-ray was ordered; and he was instructed to return to Health Services if his condition worsened. Id. The chest x-ray was performed on June 16, 2014 and was negative. Id.

Plaintiff contends that he "put in" for a chronic care visit "on or about" December 1, 2014 but was not called until December 2, 2014; was seen by one PA Zebley; again explained to medical staff that he was in remission from Hodgkin's Lymphoma; in response, he was told he would be placed on call out for a PET scan in the future and was prescribed Monetasone Furoate [sic – Mometasone Furoate][11] and Prednisone. ECF No. 1-1 at 2. He states that he was next seen on December 24, 214 by Defendant Rebault; that while examining him, Rebault listened to his

---

[9] Prednisone is a corticosteroid that prevents the release of substances in the body that cause inflammation. used as an anti-inflammatory or an immunosuppressant medication. Prednisone is used to treat conditions such as allergic disorders, skin conditions, ulcerative colitis, arthritis, lupus, psoriasis, or breathing disorders. See Drugs.com, Prednisone, available at: https://www.drugs.com/prednisone.html

[10] Benzonatate, or Tessalon Perles, is a non-narcotic cough suppressant. See Drugs.com, Benzonatate, available at: https://www.drugs.com/cdi/benzonatate.html

[11] Mometasone, (brand name Asmanex), is a corticosteroid bronchodilator inhaler, used for maintenance treatment of asthma as prophylactic therapy or for chronic obstructive pulmonary disease. See MPR, Asmanex Twisthaler Rx, available at http://www.empr.com/asmanex-twisthaler/drug/2898/

breath sounds, heard "a little" wheezing, and determined it was asthma but that Plaintiff "was fine;" and ordered a "breathing machine." Id. Plaintiff further avers that on December 25, 2014, he was seen in medical by one "D. Dawson," who listened to his chest; determined that his heart sounds were muffled and could not hear anything on the left side. Plaintiff was then transferred to the hospital. Id.

However, the Warden's April 29, 2015 response to Plaintiff's administrative remedy states that Plaintiff's first return to sick call after the June 16, 2014 x-ray was on September 15, 2014, when he came for a chronic cough, reporting it was worse at night and that the prescribed medication provided no relief. ECF No. 1-1 at 4. On exam, he had no wheezing. Id. The unidentified provider who saw him requested his medical records, including a previous PET scan result, from "the community hospital." Id. Plaintiff apparently reported to sick call again on October 24, 2014 for wheezing and shortness of breath, and was diagnosed with asthma, prescribed an Albuterol inhaler and Mometasone Furoate 220mcg, another inhaler. Id. He returned to sick call again on December 2, 2014, for his cough. Id. The MLP noted that Plaintiff's records from the community hospital containing his PET scan results had not yet arrived, and ordered a PET scan "to be performed at your current facility for further evaluation." Id. Finally, the Warden's response indicates that on December 25, 2014, Plaintiff came to sick call complaining of weakness and shortness of breath, and stating his asthma medication was not helping. Id. at 5. He was examined by the nurse and the MLP, and sent to the emergency room where a CAT scan was performed, revealing a large pericardial effusion. Id. Plaintiff also apparently had symptoms of lymphadenopathy (enlarged lymph glands) at the time [Id.]; but it is unclear from the Warden's response if this was a finding on the CAT scan or on physical exam.

Subsequently, Plaintiff's Hodgkin's Lymphoma was determined to have recurred and he began treatment for it. Id.

Here, viewing the allegations in the complaint in the light most favorable to Plaintiff, as required, it appears that he has proven the objective prong necessary to prove an Eighth Amendment claim of deliberate indifference because his Hodgkin's Lymphoma condition could be a sufficiently serious medical need. Wilson, 501 U.S. at 298; see also Scarbro v. New Hanover County, 274 Fed. Appx. 366, 371 (4th Cir. 2010) (injury from a head-first fall onto concrete was an objectively serious medical need; autopsy afterward showed an acute subdural hematoma and neck fracture).

However, Plaintiff has failed in his burden to prove the second, subjective prong of the Eighth Amendment analysis because he cannot show that Defendants Bushman and Rebault were deliberately indifferent. Medical staff may be found to be deliberately indifferent by intentionally denying or delaying access to medical care or by intentionally interfering with a prescribed course of treatment. Estelle, *supra* at 104-05. The record as a whole disputes plaintiff's claim that he was "denied proper medical treatment in a timely manner" by the defendants. The attached administrative remedies and their responses make it clear that plaintiff was seen regularly in sick call and the Chronic Care Clinic; his medications were changed according to his reports of continued symptoms of cough and/or wheezing; and new medications were added and others discontinued when appropriate. It is also apparent from the record that medications were not prescribed "without any examination or testing" as Plaintiff claims; Plaintiff's chest had to have been auscultated in order for the wheeze to be heard, and first a chest x-ray, and then a PET scan were ordered, when his symptoms persisted. His records from a previous institution were sent for. Plaintiff was also encouraged to return if his condition

worsened.  It is clear from the limited record available that Bushman and Rebault evaluated and properly and timely treated Plaintiff for each of his initially non-specific complaints of cough and/or wheezing as they presented, and that there was never an intentional interference with a prescribed course of treatment.  It does not appear from the record that Plaintiff reported the more ominous and obvious Hodgkins Lymphoma symptoms of fevers, fatigue, persistent cough, shortness of breath, night sweats and itching on his earlier visits[12] for the cough, based on the fact that the only medications that were prescribed were medications for cough or respiratory conditions.

The majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; i.e. "no care," rather than "bad care." See, e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir. 1991), *cert. denied*, 502 U.S. 960 (1991). Here, even if the undersigned concluded that Plaintiff received "bad care," which he does not, Plaintiff did receive care.

Despite the plaintiff's attempt to characterize his claim as one of deliberate indifference, it is clear from the plaintiff's medical records that the defendants were not indifferent to his needs.  It appears then, that the plaintiff really takes issue with the type of treatment he received. In other words, the plaintiff merely disagrees with the prison's medical staff as to his diagnosis or course of treatment. However, such a claim is more appropriately a tort claim and, as already noted, does not rise to the level of a constitutional violation.

Accordingly, while Plaintiff's claims against Rebault and Bushman would otherwise have been dismissed without prejudice for failure to effectuate service, even if Rebault and Bushman had been successfully served, they would have been entitled to judgment as a matter of

---

[12] Plaintiff states his first visit for the cough was "on or about May, 2014," while the Warden's April 29, 2015 response after reviewing Plaintiff's medical records states that the first visit for the cough was June 3, 2014.

law because the plaintiff has also failed to state a claim upon which relief can be granted against them. Thus, their dismissal for failure to effectuate service should be with prejudice.

**B. Medical Malpractice and/or Medical Negligence Claims**

The plaintiff contends that Defendants Bushman, Mims, Ribault, and Nolte failed to correctly diagnose his condition and did not order any testing or examination, but only provided incorrect medications based on their misdiagnoses. ECF No. 1 at 8.

To the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all

health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).[13]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for his Hodgkin's Lymphoma. Further, under the circumstances of this case, Plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' alleged breach of the duty of care. This is not a case of alleged malpractice so obvious that it entitles plaintiff to the common knowledge exception of W.Va. Code §55-7B-6(c).[14] Nor is this a case where the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, supra at 851. Accordingly, the negligence alleged here is does not relieve plaintiff of the obligation to comply with the MPLA pre-suit requirements.

---

[13] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[14] An example of such a case would be "hospital fall incidents, where a majority of jurisdictions do not require expert testimony. McGraw v. St. Joseph's Hosp., 200 W. Va. 114, 120, 488 S.E.2d 389 (W.Va. 1997)(emphasis in the original).

Therefore, even if this court had supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal would be appropriate.

## V. Recommendation

For the reasons stated above, the undersigned hereby recommends that the defendants' Motions to Dismiss [ECF No. 24] be **GRANTED** and plaintiff's complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice as to Defendants O'Brien, Nolte, Mims, and Fitzhugh for failure to state a claim upon which relief can be granted, and DISMISSED with prejudice against Defendants Bushman and Rebault because the claims against them cannot survive on the merits even had they been served.**

Further, the undersigned recommends that plaintiff's pending Motion to Amend [ECF No. 33] be **GRANTED** and his pending Motion for Appointed Counsel [ECF No. 33] be **DENIED as moot.**

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

**The Clerk is directed to correct the docket to reflect that the name of the defendant identified in the complaint as "USP Warden" is Terry O'Brien, the Warden of USP Hazelton**. The Clerk is further directed to send a copy of this Report and Recommendation to

the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy to all counsel of record via electronic means.

DATED: August 25, 2016.

 /s/   James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE